UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JOSEPH HULLINGS,<br><br>    Plaintiff,<br><br>    v.<br><br>DEPUTY CHAD JOHNSON, et al.,<br><br>    Defendants. | Case No. EDCV 13-2320-R (JEM)<br><br>MEMORANDUM AND ORDER<br>DISMISSING COMPLAINT<br>WITH LEAVE TO AMEND |

On January 9, 2014, Michael Joseph Hulling ("plaintiff"), proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").¹

**SCREENING STANDARDS**

In accordance with the provisions governing in forma pauperis proceedings, the Court must screen the Complaint before ordering service to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). This screening is governed by the following standards:

---

    ¹ Plaintiff initially filed his Complaint in the United States District Court for the Southern District of California, which transferred the action to this judicial district.

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. <u>Love v. United States</u>, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." <u>Neitzke v. Williams</u>, 490 U.S. 319, 330 n.9 (1989). "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" <u>Bruns v. Nat'l Credit Union Admin.</u>, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982)).

Although a complaint "does not need detailed factual allegations" to survive dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)). The complaint must contain factual allegations sufficient to rise above the "speculative level," <u>Twombly</u>, 550 U.S. at 555, or the merely possible or conceivable. <u>Id.</u> at 557, 570.

Simply put, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. A claim has facial plausibility when the complaint presents enough facts "to draw the reasonable inference that the defendant is liable." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). This standard is not a probability requirement, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> A complaint that pleads facts that are merely consistent with liability stops short of the line between possibility and plausibility. <u>Id.</u>

In a <u>pro se</u> civil rights case, the complaint must be construed liberally to afford plaintiff the benefit of any doubt. <u>Karim-Panahi v. Los Angeles Police Dept</u>, 839 F.2d 621, 623 (9th Cir. 1988). Unless it is clear that the deficiencies in a complaint cannot be cured,

pro se litigants are generally entitled to a notice of a complaint's deficiencies and an opportunity to amend prior to the dismissal of an action. Lucas v. Dept. of Corrections, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Karim-Panahi, 839 F.2d at 623. Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be dismissed without leave to amend. Id. at 623; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995); McQuillon v. Schwarzenegger, 369 F.3d 1091, 1099 (9th Cir. 2004) (where amendment would be futile, complaint may be dismissed without leave to amend).

After careful review and consideration of the Complaint under the relevant standards and for the reasons discussed below, the Court finds that the Complaint must be **DISMISSED WITH LEAVE TO AMEND.**

## PLAINTIFF'S ALLEGATIONS

Plaintiff is suing the following employees of the San Bernardino County Sheriff's Department ("Sheriff's Department"): deputy sheriffs Chad Johnson, Sousa, Mark Pederson, and William Stringer; sergeant Keith Proctor; and John and Jane Does 1 through 10. (Complaint at 2.) Plaintiff sues the named defendants in their individual and official capacities. (Id.)

Plaintiff alleges that on March 2, 2012, sheriff's deputies arrived at his mobile home in Rancho Cucamonga. Plaintiff fled through the back door and tried to inconspicuously discard his methamphetamine pipe, but Sousa saw him and instructed him to get down on the ground. Plaintiff lay down on his stomach with his chin on the pavement, crossing his hands behind his back and crossing his ankles. Sousa then kicked plaintiff in the head, chipping and breaking his teeth. Sousa continued to kick plaintiff in the head and other deputies joined in, even though plaintiff repeatedly called out that he was not resisting in any way. (Complaint at 3-4.)

Plaintiff's teeth were chipped and broken from contact with the concrete pavement, his mouth was full of blood, and he was nauseated from swallowing blood and bits of teeth.

1  (Complaint at 3-4.) After he was handcuffed, Deputy Johnson stepped on his head and
2  ground his boot into plaintiff's ear, injuring it. (Id. at 4.)
3        The deputies took plaintiff to San Antonio Hospital in Upland to be treated for his
4  injuries. (Complaint at 4.) Plaintiff was "a bloody mess." His wounds were cleaned, his ear
5  was sutured, and bandages were applied to his many cuts and abrasions. He was given
6  Vicoden for the pain from his broken teeth. Before plaintiff left the hospital, Sergeant
7  Proctor interviewed him and photographed his injuries. (Id.) On the way from the hospital
8  to the jail, Johnson stopped at the sheriff's station and Proctor again interviewed plaintiff.
9  Plaintiff was then booked into jail on a charge of possession of a controlled substance. (Id.
10 at 5.)
11       By the time plaintiff was booked into jail and housed, it was late Friday night. On
12 Saturday he was in great pain and unable to eat due to the state of his teeth. He pushed
13 the medical emergency button in his cell and explained his situation to the responding
14 sheriff's deputy, who took him to see the duty nurse in the medical unit. Since it was
15 Saturday, there were no doctors or dentists present, and the nurse merely gave him
16 Tylenol. (Complaint at 5.)
17       On Monday morning, plaintiff again pushed the medical emergency button and was
18 sent directly to a dentist. The dentist took X-rays and performed remedial work on plaintiff's
19 shattered teeth, but he told plaintiff that the work had to be done in stages because the
20 damage to his teeth was so far-reaching. (Complaint at 5.) Ten days later stitches were
21 removed from plaintiff's ear and the back of his head. (Id. at 6.)
22       Plaintiff alleges that he has suffered permanent and irreparable damage to his teeth
23 and suffers from panic attacks since the assault. (Complaint at 6.) He asserts the following
24 claims: right to medical care, due process, and freedom from cruel and unusual punishment.
25 (Id. at 3-6.) He requests compensatory and punitive damages, as well as injunctive relief
26
27
28

ordering, among other things, dismissal of the defendants from the Sheriff's Department and their criminal prosecution by the San Bernardino District Attorney's office.[2] (Id. at 8.)

## DISCUSSION

### I. PLAINTIFF'S ALLEGATIONS ARE SUFFICIENT TO ASSERT EXCESSIVE FORCE CLAIMS AGAINST SOUSA AND JOHNSON, BUT NOT AGAINST PEDERSON, STRINGER, AND PROCTOR.

Plaintiff asserts an excessive force claim under the Eighth Amendment. The law is clear that all claims for excessive force in an arrest, investigatory stop, or other seizure of a free person must be brought under the Fourth Amendment and analyzed under its objective "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). The Due Process Clause of the Fourteenth Amendment governs excessive force claims brought by pre-trial detainees. Id. at 395 n.10; Bell v. Wolfish, 441 U.S. 520, 535-39 (1979). After conviction, the Eighth Amendment protects prisoners from the use of excessive force. Graham, 490 U.S. at 395 n.10.

Plaintiff alleges that the excessive force took place during his arrest. Thus, his excessive force claims arise under the Fourth Amendment rather than the Eighth Amendment. Plaintiff's factual allegations are sufficient to allege that he was subjected to unreasonable force in violation of the Fourth Amendment. However, in order to hold the named defendants liable, he must allege personal participation in the excessive force by each defendant. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) ("Liability under § 1983 must be based on the personal involvement of the defendant.")

Plaintiff's allegations that deputy Sousa repeatedly kicked him in the head as he lay unresisting on the ground, shattering his teeth, state a Fourth Amendment excessive force claim against Sousa. (Complaint at 3-4.) Plaintiff's allegations that deputy Johnson stepped on plaintiff's head and ground his boot into plaintiff's ear, which subsequently had to be sutured, state a Fourth Amendment excessive force claim against Johnson. (Id.)

---

[2] The Court will not address the injunctive relief sought by plaintiff at this time.

However, the Complaint does not contain any factual allegations about deputies Pederson and Stringer. Plaintiff does not allege that they kicked him or used force against him; in fact, he does not even allege that they were present. If plaintiff is alleging that Pederson and Stringer were among the deputies who joined Sousa in kicking him, he should say so. If not, or if plaintiff does not know whether Pederson and Stringer joined in the assault, he may still be able to state a claim against them if they were present and failed to take reasonable steps to stop Sousa and other deputies from kicking him. See Fundiller v. Cooper City, 777 F.2d 1436, 1441-42 (11th Cir.1985) ("It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance."); see also Kraft v. Laney, 2005 WL 2042310, *5 *E.D. Cal., Aug. 24, 2005) (CIV S-04-0129GGH) ("Inactivity in the face of circumstances in which the reasonable police officer would know that he needed to take steps to avoid the use, or continued use, of excessive force on a detainee will lead to liability.") (citing Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003)). However, as it stands now, the Complaint contains no factual basis for a claim against Pederson or Stringer.

Plaintiff's allegations are also insufficient to state a claim against Sergeant Proctor. If Proctor was on the scene and did not intervene to stop the assault, plaintiff has stated an excessive force claim against him. See Lolli, 351 F.3d at 418 (sergeant who observed deputies' assault on detainee and failed to intervene was not entitled to summary judgment). However, plaintiff does not clearly allege that Proctor was on the scene when the assault occurred. It appears that Proctor only became involved afterwards, when he interviewed plaintiff at the hospital and again at the police station. (Complaint at 4, 5.) Plaintiff cannot hold Proctor liable for the deputies' excessive force based on Proctor's after-the-fact investigation. This is true even though plaintiff alleges that Proctor tried to cover up the incident. See Hutchinson v. Grant, 796 F.2d 288, 291 (9th Cir.1986) (rejecting theory that town was liable under civil rights conspiracy statute based on alleged cover-up designed to

excuse plaintiff's arrest, because claim against town could not rest on police activity after arrest ocurred); Mackey v. County of San Bernardino, 2012 WL 5471061, *14 (C.D. Cal., Sept. 28, 2012) (EDCV 09-1124-GW SP) , adopted by, 2012 WL 5465857 (C.D. Cal., Nov. 9, 2012) (defendant's alleged cover-up of shooting constituted after-the-fact conduct insufficient to render him liable for excessive force).

Accordingly, plaintiff's Fourth Amendment excessive force claim survives screening as against Sousa and Johnson in their individual capacities, but not as against Pederson, Stringer, and Proctor.

## II. ANY DUE PROCESS CLAIM BASED ON THE ALLEGED COVER-UP IS PREMATURE.

Liberally construed, the Complaint asserts a due process claim against Proctor based on allegations that Proctor tried to cover up the assault by refusing to provide plaintiff with photographs of his injuries and other evidence from Proctor's investigation. (Complaint at 2.)

Allegations that a defendant participated in a cover-up state a Section 1983 claim only if the cover-up deprived a plaintiff of his right of access to courts by causing him to fail to obtain redress for the violation that was the subject of the cover-up. See Delew v. Wagner, 143 F.3d 1219, 1222-23 (9th Cir. 1998); Karim-Panahi, 839 F.2d at 625. In order to allege such a claim, plaintiff must allege that the cover-up actually precluded him from prevailing in a state or federal lawsuit against the wrongdoers. Delew, 143 F.3d at 1222-23. Thus, a cover-up claim is premature when, as here, plaintiff's action seeking redress for the underlying violations remains pending. See id.; Karim-Panahi, 839 F.2d at 625 (claim alleging police cover-up of misconduct was premature when action challenging misconduct was pending).

Accordingly, plaintiff cannot bring a due process cover-up claim at this time.

///
///
///

### III. **PLAINTIFF FAILS TO STATE A CLAIM FOR INADEQUATE MEDICAL CARE.**

Plaintiff also asserts a claim for inadequate medical care. Plaintiff does not specify against whom he is asserting this claim, but he appears to be asserting it against one or more of the Doe defendants.

#### A. Applicable Federal Law

The state must provide medical care to prisoners, because their incarceration has deprived them of the ability to secure medical care for themselves. Estelle v. Gamble, 429 U.S. 97, 103 (1976); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). Failure to provide medical care may violate the Cruel and Unusual Punishment Clause of the Eighth Amendment if it amounts to deliberate indifference to a prisoner's serious medical needs. Estelle, 429 U.S. at 104

A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)(en banc). A serious medical need exists if failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain. McGuckin, 974 F.2d at 1059. Examples of serious medical needs include: '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059-60.

Deliberate indifference requires that defendants purposefully ignore or fail to respond to the prisoner's pain or medical need. McGuckin, 974 F.2d at 1060. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care." Id. at 1059; see Estelle, 429 U.S. at 104-05. However, an inadvertent or negligent failure to provide medical care does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06. When medical treatment is delayed rather than denied, the delay generally

amounts to deliberate indifference only if it caused further harm. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985); see also Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (delayed dental care did not violate Eighth Amendment because plaintiffs did not show that "delays occurred to patients with problems so severe that delays would cause significant harm").

### B.   Analysis

Since plaintiff had not yet been convicted at the time he was allegedly denied medical care, his claim arises under the due process clause, but Eighth Amendment standards apply. See Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff's inadequate medical care claim rests on his allegation that he was forced to wait the entire weekend to see a dentist. (Complaint at 3,6.) Plaintiff's factual allegations, however, bely any finding of deliberate indifference. Plaintiff was booked into the jail late Friday evening. When he complained about his pain and inability to eat on Saturday morning, he was promptly taken to a nurse, who gave him Tylenol for the pain. There were no dentists working in the jail medical unit during the weekend, but plaintiff was taken to a dentist Monday morning. He does not allege that the two-day delay caused any further harm to his teeth. See Hallett, 296 F.3d at 746; Hunt, 865 F.2d at 200; Shapley, 766 F.2d at 407.

Moreover, plaintiff does not specify against whom he is asserting this claim. If he is asserting it against the duty nurse he saw on Saturday, his own allegations show that she could not have procured him a visit to the dentist any earlier than Monday.

Accordingly, plaintiff's denial of medical care claim does not survive screening.

### IV.   **PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES.**

Plaintiff has sued the named defendants in their official as well as individual capacities. (Complaint at 2.)

An official capacity claim is merely another way of pleading a claim against the governmental entity of which the official is an agent. Monell v. Department of Social Services, 436 U.S. 658, 690 n.55 (1978); see also Kentucky v. Graham, 473 U.S. 159, 166 (1985).. Consequently, plaintiff's claims against defendants in their official capacities are, in effect, claims against their employing entity, the Sheriff's Department.

To allege a Section 1983 claim against a local governmental entity such as the Sheriff's Department, plaintiff must allege not only a constitutional deprivation but also a policy, custom, or practice of the Sheriff's Department that was the "moving force" of the constitutional deprivation. Monell, 436 U.S. 658, 694-95 (1978); Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008). A local governmental entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." As the Ninth Circuit has recently explained: "Under federal law, the County cannot be held vicariously liable for its deputies' acts of excessive force. The County may be held liable only if it has adopted an illegal or unconstitutional policy or custom" that resulted in the excessive force." Cameron v. Craig, 713 F.3d 1012, 1023 (9th Cir. 2013) (internal quotation marks and citations omitted).

Plaintiff has not identified any policy, custom, or practice of the Sheriff's Department that resulted in the deputies' use of excessive force against him. See Cameron, 713 F.3d at 1023 (County entitled to summary judgment because plaintiff did not identify "any custom or policy of the County that guided the deputies' use of force in the search and arrest"). Absent such allegations, he has not alleged a claim against defendants in their official capacities.

************

For the reasons set forth herein, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.

If Plaintiff desires to pursue this action, he is **ORDERED** to file a First Amended Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies discussed above.

If Plaintiff chooses to file a First Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "First Amended Complaint"; (3); be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself without reference to the previous complaints or any other pleading, attachment or document. The Clerk is directed to provide plaintiff with a blank Central District of California civil rights complaint form, which plaintiff must fill out completely and resubmit.

**Plaintiff is admonished that, if he fails to file a First Amended Complaint by the deadline set herein, the Court may recommend that this action be dismissed for failure to prosecute and failure to comply with a Court order.**

DATED: June 30, 2014         */s/ John E. McDermott*
                                                         JOHN E. MCDERMOTT
                                                    UNITED STATES MAGISTRATE JUDGE